168 So. 190

## ST. JOHN v. STATE.

### 6 Div. 864.

Court of Appeals of Alabama.

Feb. 11, 1936.

Rehearing Denied Feb. 25, 1936.

Wm. Conway, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Geo. Lewis Bailes, Sol. and Robt. G. Tate, Deputy Sol., both of Birmingham, for the State.

RICE, Judge.

C. L. St. John, the appellant, was convicted of having embezzled over $25 from Brink's Incorporated, a corporation, and upon his conviction was sentenced by the court to the penitentiary for a minimum term of eight years and a maximum term of nine years.

The testimony in the case shows that Brink's, Incorporated, was the owner and operator of a messenger service in the city of Birmingham, and in other places over the country; that such service was conducted by the use of armored trucks, said trucks containing a guard and operated by a driver, the guard being locked on the inside of said armored truck. This appellant was the driver and operator of one such truck.

The Atlantic & Pacific Tea Company is a corporation owning and operating fifty-one retail grocery stores in the city of Birmingham.

The Atlantic & Pacific Tea Company had contracted with Brinks, Incorporated, to have armored trucks call daily at each of their retail stores in Birmingham, Ala., and pick up sealed packages containing currency, checks, etc., and to transport such packages to the First National Bank of Birmingham, Ala., and to there deliver said packages intact to said bank. In of this connection it was the duty of the appellant, St. John, to drive and operate said truck, to receive said packages from the various store managers, to place the same in a chute, which sent them into a locked vault on the inside of said truck, which vault could not be opened without both the keys and joint action of the appellant and the guard on the inside of said truck. It was appellant's further duty to transport said packages in said truck to the bank and there make delivery of the same.

On the 26th day of January, 1935, J. T. Bryant, manager of an A. & P. Retail Store, delivered such a package to the appellant. The package contained one $10 bill, three $1 bills, and checks and silver sufficient to make a total of $100. Said package also contained a duplicate deposit slip, whereon Bryant had written the serial number of the $10 bill. Said package, together with approximately fifty similar packages, was carried to the teller's window of the bank and turned over to Mrs. Mary Wilson, teller, and said packages were immediately opened in the presence of Max Horton, also a teller, Mr. Wade Fleetwood, an assistant cashier of said Bank, and Mr. Fred Bodeker, a private detective. It developed that the package was short $10, and that the only missing item was the $10 bill. Upon this discovery city detectives, who were in attendance in the lobby of the bank, arrested the appellant, who was conducting other business for his employer, Brink's, Incorporated. The appellant turned his dray book over to the manager of Brink's, Incorporated, who was also in attendance. He was taken up stairs in the building and searched. On his person there was found a writing pen staff, a pen point, and a pocketknife. The $10 bill not being found, one of the city detectives made a search of the truck and found the bill folded in the dray book; said bill having the same serial number as was found on the deposit slip. When confronted with the $10 bill, the appellant voluntarily confessed to having taken same from said package.

He stated that he procured the bill from the package by using the pocketknife to cut the tape around same about one-half inch from the corner, then under the tape he cut the corner of the envelope, shook the money down to the end, inserted the pen point in the pen staff and spread the point of the pen slightly, then inserted same into the corner of the envelope, caught the edge of the bill between the two prongs of the pen point, then by twisting the pen he rolled the bill around itself until it was about the size of a cigarette, and then pulled it through the small opening. After this was done, he resealed the paper tape over the cut place in the corner of the envelope, and in this manner it could not be detected by any one as having been tampered with except upon very minute and careful inspection. He stated that he did this in the toilet of a filling station where it was his duty to call.

The state introduced in evidence the pen staff which was cut down to about the

size of a pencil, the pen point, the prongs of which were spread slightly, and the pocketknife. The state further introduced wrappers previously containing money, sealed and delivered to appellant in the regular course of business, later developing shortage as shown by said wrappers in evidence of $135. Other witnesses, managers of A. &. P. stores, testified that they delivered packages to appellant containing money which when counted at the bank developed shortages of various amounts over a period of two to three years.

The defendant denied the above facts and denied making the confession, denied that the pen point was taken off of his person, and stated that the whittled down pen staff, found on him was used for the purpose of cleaning his pistol, and that he had purchased the knife only a few weeks before.

From what is set out above, it is abundantly clear that, viewing the testimony as it appears the jury viewed it, appellant was guilty. But guilty of what?

His industrious and resourceful counsel argues here, forcibly, that, whereas he was indicted and tried for the crime of embezzlement (Code 1923, §§ 3960, 3966), the testimony against him tended to show, only, the offense of larceny, and not embezzlement, and that hence, it was reversible error on the part of the trial court to refuse to give to the jury at his proper request the general affirmative charge to find in his favor. But we do not agree.

■ One who converts to his own use money or property which comes into his possession by virtue of his agency on behalf of his principal is guilty of embezzlement. Statutes against embezzlement are for the protection of employers against the frauds of those in whom they have confided. The distinction between the two offenses is well drawn and logically discussed by Judge Samford in the opinion for this court in Weldon v. State, 17 Ala. App. 68, 81 So. 846, from which we quote the following language:

"In efforts to maintain and uphold judgments of courts in cases of dishonesty, the appellate courts have clouded, rather than elucidated, the distinction between embezzlement and larceny. But one thing remains. clear, and that is that in larceny there must be a trespass and a trespass is a wrong to the possession. Holbrook v. State, 107 Ala. 154, 18 So. 109, 54 Am.St. Rep. 65; 25 Cyc. 22. In order to render the offense larceny where there is an appropriation by a servant who is already in possession, it must appear that the property was at the time in the constructive possession of the master. 25 Cyc. 22. In order for property to be in the constructive possession of the master, the property must once have been in his possession, and have been delivered by him to the servant. Roscoe on Criminal Evidence, § 646; 25 Cyc. 26. But, if the money comes to the possession of the servant from a third person and has never been in the possession of the master, and the servant converts it, it may be embezzlement, but not larceny. Holbrook v. State, supra; Com. v. Berry, 99 Mass. 428, 96 Am.Dec. 767; 9 R.C.L. 1271, par. 11; Talbert v. State, 121 Ala. [33], 36, 25 So. 690. In other words, a servant has possession, as distinguished from custody, where property is received from a third person for the master, until he delivers it to the master or has put the master in possession by depositing it in a depositary provided by the master for that purpose; until he has done this, if he fraudulently appropriate the property, it is embezzlement. Com. v. King, 9 Cush. (Mass.) 284; Rex v. Walsh, 2 Leach, C.C. 1054; State v. Johnson, 49 Iowa, 141; Rex v. Bagley, 2 East, P.C. 571; Reg. v. Betts, Bell, C.C. 90. If, on the other hand, the property has been delivered to the master, and the fraudulent conversion takes place by the servant, it is larceny."

Now, applying the law as stated in the above case to the facts in this case. The ownership of the property was alleged and proven to have been in Brink's, Incorporated, rather than in the Atlantic & Pacific Tea Company. The appellant was the agent of Brink's, Incorporated, and not of the Atlantic & Pacific Tea Company. Paraphrasing the language of the above case: "If the money came into the possession of the servant (appellant) from a third person (manager of A & P store) and it has never been in the possession of the master (Brink's, Incorporated), and the servant (appellant) converts it, it may be embezzlement, but not larceny."

Appellant cites many cases where possession of the property was obtained by trick, subterfuge, or fraud. In such cases the element of fraud in obtaining the pos-

100

session has been held to take the place of the trespass ordinarily necessary in larceny, but these cases can have no application here. Nobody was tricked by fraud or subterfuge in parting with the possession of this property. On the contrary, the possession of it was delivered to the appellant in the ordinary and usual course of business.

. Appellant's counsel has displayed commendable powers of research; he has sought out and cited a great number of cases thought by him to bear on the question before us. A number of them doubtless do.

We have examined all these cases with a great deal of interest. Much might be written by us as our effort to elucidate the distinction between "embezzlement" and "larceny." But the decision and opinion in the Weldon Case cited above seem to be yet unquestioned by our Supreme Court. Upon the authority of the reasoning in the opinion in that case, we are impressed that here the verdict of the jury found ample support in the evidence.

Certainly the jury were warranted in finding that appellant "took the money." As for "splitting hairs" as to whether the taking (unauthorized taking) was "embezzlement" or "larceny," we rest on what was said in the Weldon Case, supra, and order the judgment affirmed.

Affirmed.